IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **LAWONZA PARKER-RIVERS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.** |
| ) | |
| **BIRMINGHAM-JEFFERSON COUNTY** ) | |
| **TRANSIT AUTHORITY,** ) | |
| ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendant.** ) | |

### COMPLAINT

### STATEMENT OF JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to its general original jurisdiction and under other statutory authority. This is a suit authorized and instituted pursuant to 42 U.S.C. § 2000e, et seq, known as Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 1981, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), and the Americans with Disabilities Act ("ADA"), as amended.

2. This Court has original jurisdiction, pursuant to 28 U.S.C. § 1331, as this civil action arises under the laws of the United States cited above. This Court also has original jurisdiction, pursuant to 28 U.S.C. § 1343(a); as this civil action seeks to secure the protection of, and redress the deprivation of, rights secured by Title VII, Section 1981, Section 504, and the ADA, providing for injunctive and other relief against discrimination and retaliation.

3. Venue is proper in this district, pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claim occurred in Jefferson County, Alabama located within this judicial district.

4. Plaintiff has fulfilled all conditions precedent to the institution of this action, as required under Title VII and the ADA.

## STATEMENT OF THE PARTIES

5. Plaintiff Lawonza Parker-Rivers (hereinafter referred to as "Plaintiff" or "Rivers") is an African-American female over the age of nineteen (19) years. She is a resident of the State of Alabama. At all times relevant to this Complaint, Plaintiff was an employee of the named Defendant.

6. Defendant Birmingham-Jefferson County Transit Authority (hereinafter "Defendant" or "BJCTA") is an entity subject to suit under Title VII, Section 1981, and the ADA. At all times relevant herein, Defendant was Plaintiff's employer.

## STATEMENT OF THE FACTS

7. Plaintiff began her employment with the Birmingham–Jefferson County Transit Authority ("BJCTA") on or around September 30, 2024 as a Contract Specialist. During Plaintiff's interview for the position on or around August 21, 2024, interviewer Collina Beard informed Plaintiff that she could work remotely as needed. This representation was a significant factor in Plaintiff's acceptance of the position.

8. During the interview, Beard also stated that the salary range for the position was $75,000.00 to $85,000.00. Plaintiff requested $80,000.00. Shortly thereafter, recruiter Michael Lukens (white male) contacted Plaintiff and informed her that no salary range existed, and the offer would be $75,000. Plaintiff accepted the position at the lower rate so as not to lose the opportunity.

9. Plaintiff's position required regular interaction with multiple procurement personnel, including Procurement Supervisor Matt Lynch, Procurement staff members Fred and

2

Charles, Project Manager Shana, and Procurement leadership including Chief Dickerson and Director Shaw. Several members of the procurement department—including Collina, Fred, Shana, Charles, and IT personnel—worked remotely intermittently. In addition, employee Alma Sanchez, hired after Plaintiff, was permitted remote work on November 8, 2024. Sanchez informed Plaintiff that she had been encouraged not to disclose her remote-work approval so that Plaintiff would not request the same.

10. Plaintiff is an African-American woman with disabilities including PTSD, anxiety, and panic-related symptoms. BJCTA was aware of Plaintiff's disabilities. From the outset of her employment, Plaintiff was treated less favorably than similarly situated employees outside her protected classes, including non-Black and non-disabled coworkers, who were provided training, remote-work flexibility, and departmental support that Plaintiff was denied.

11. Early in Plaintiff's employment, procurement employee Christy Howard ("Howard") made a derogatory comment referring to Plaintiff as "pretty and useless" in a conversation with Lynch, loud enough for Plaintiff and others to hear. Plaintiff later filed a complaint about Howard's conduct, and Howard received a written disciplinary notice on October 18, 2024.

12. Plaintiff soon experienced escalating hostile and discriminatory conduct from Lynch. Lynch repeatedly summoned Plaintiff into closed-door meetings, during which he demeaned her emotional state and referred to Plaintiff as "broken," "wounded," and "a wounded baby bird," despite knowing Plaintiff suffered from PTSD and anxiety. Lynch made similar remarks publicly in front of other staff. Lynch's conduct was not directed at non-disabled, male, or non-Black employees.

13. Further, Lynch actively interfered with Plaintiff's ability to perform her position. Although Chief Dickerson assigned Plaintiff mandatory training, Lynch blocked her attendance and prevented her from obtaining training. Notably, Lynch did not block training for any of Plaintiff's similarly situated counterparts who were outside of her protected classes.

14. On October 18, 2024, Plaintiff submitted a formal complaint to Human Resources regarding discriminatory conduct against her.

15. On that same date, Plaintiff discovered unauthorized access to her BJCTA computer and the deletion of work-related emails. Plaintiff reported these concerns to the IT Director, who confirmed abnormalities and observed Plaintiff's visible distress. IT personnel corrected improper software changes that had removed essential applications from Plaintiff's workstation. After this incident, Plaintiff's ability to delete emails and change passwords was revoked without explanation. None of Plaintiff's similarly situated counterparts outside of her protected classes dealt with this.

16. Following Plaintiff's October 18th complaint of discrimination, Lynch escalated his conduct. He increased Plaintiff's workload, monitored her computer activity, excluded her from meetings, instructed coworkers not to communicate with Plaintiff directly, and repeatedly stated that Plaintiff would "sink or swim" and that if she "didn't fit, [she] didn't sit." Lynch also told Plaintiff that BJCTA would be downsizing and that he would protect Fred and Charles, but "didn't know" about Plaintiff—further contributing to an intimidating, destabilizing environment. Chief Dickerson observed Lynch's repeated closed-door interactions with Plaintiff and expressed concern to Plaintiff about Lynch's behavior. Again, Lynch did not treat any of Plaintiff's similarly situated counterparts outside of her protected classes in this way.

17. During the week of October 28, 2024, Plaintiff witnessed another female employee exit Lynch's office crying uncontrollably. The female employee told Plaintiff that Lynch was "abusive," that he had made intimidating comments about both Plaintiff and her, and that she feared remaining employed. The female employee also reported that Lynch had attempted to block them from attending federally required procurement training scheduled by Director Shaw and Chief Dickerson.

18. Plaintiff reported Lynch's conduct to Director Shaw's office. Shaw instructed Plaintiff to go home and assured her that she would address the matter. Lynch was terminated the following day.

19. Unfortunately, Lynch's termination did not change anything for Plaintiff. Indeed, following Lynch's termination, Plaintiff continued to experience ostracism, hostility, and monitoring by certain staff members aligned with Lynch, including IT personnel. Plaintiff was excluded from communications, subjected to unprofessional treatment, and undermined publicly. Notably, none of Plaintiff's similarly situated counterparts who were outside of her protected classes had to suffer such treatment. Further, Plaintiff's anxiety, PTSD, and panic symptoms worsened due to the escalating hostile environment. Plaintiff sought medical assistance, contacted suicide-prevention hotlines, and experienced chest pain and neurological symptoms verified during a mid-November hospital visit.

20. Moreover, Plaintiff's similarly situated counterparts outside of her protected classes were granted remote-work flexibility without medical documentation. Plaintiff, however, was denied similar consideration despite worsening symptoms and despite the remote work option offered to her at hiring.

21.     On or around November 13, 2024, Plaintiff submitted a formal ADA accommodation request seeking intermittent remote work as medically necessary due to the severe psychological strain created by the hostile work environment. Plaintiff was not given an opportunity to provide medical documentation.

22.     On or around November 14, 2024—***one (1) day after her ADA request***—HR Director Kevin Mayo emailed Plaintiff stating that BJCTA had "accepted [her] resignation." ***Plaintiff had never resigned***. When Plaintiff immediately clarified that she had not resigned and asked whether her ADA request was being processed, Mayo responded dismissively and stated, "I hardly believe a temporary illness qualifies as a disability." Plaintiff was not informed whether her accommodation request had been considered or denied. Instead, she was abruptly terminated, her belongings were boxed and mailed, and HR personnel attempted to publicly humiliate Plaintiff when she retrieved her final paycheck.

23.     Plaintiff was performing her job satisfactorily at all relevant times. Defendant's stated reason for termination—a fabricated "resignation"—is false and pretextual. Plaintiff never resigned and did not intend to do so. Instead, BJCTA used the false resignation narrative to avoid responding to Plaintiff's ADA request, obscure the discriminatory motives for her termination, and retaliate against her for protected activity under Title VII and the ADA.

**FIRST CAUSE OF ACTION**
**Failure to Accommodate**
**under Title I of the Americans with Disabilities Act**

24.     Plaintiff re-alleges and incorporates by reference paragraph nos. 7-23 with the same force and effect as if fully set forth herein and further states as follows:

25.     Plaintiff is a qualified individual with a disability within the meaning of the ADA. More specifically, Plaintiff suffers from PTSD, anxiety, and panic-disorder-related symptoms that

substantially limit one or more major life activities, including concentration, emotional regulation, and stress response. These disabilities were known or obvious to BJCTA.

26.  At all relevant times, Plaintiff was capable of performing the essential functions of her position with or without reasonable accommodation.

27.  Plaintiff requested a reasonable accommodation on November 13, 2024, including remote work—a modification that BJCTA routinely afforded to similarly-situated non-disabled employees who were permitted to work from home frequently or exclusively.

28.  Despite its knowledge of Plaintiff's disabilities and the availability of remote work, Defendant failed to provide any accommodation, refused to engage in the interactive process, and terminated Plaintiff's employment within twenty-four (24) hours of her request.

29.  Defendant's refusal to consider or implement reasonable accommodations was not based on undue hardship, as remote work was commonly used in Plaintiff's department and had already been approved for other non-disabled employees.

30.  Defendant's failure to accommodate and refusal to engage in the interactive process violated Plaintiff's rights under the ADA.

31.  Defendant is directly liable for the actions and/or inactions of its managers and agents.

32.  Defendant failed to establish, implement and/or maintain practices, procedures and policies to ensure that employees with disabilities, or who were perceived or regarded as having disabilities, were accommodated when seeking reasonable accommodations.

33.  As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of

employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

## SECOND CAUSE OF ACTION
### Disparate Treatment
### under Title I of the Americans with Disabilities Act

34. Plaintiff re-alleges and incorporates by reference paragraph nos. 7-23 with the same force and effect as if fully set forth herein and further states as follows:

35. Plaintiff is a qualified individual with a disability, or was regarded as such, within the meaning of the ADA.

36. Plaintiff was subjected to adverse treatment—including denial of training, exclusion from meetings, harassment about her disability, intimidation, and termination—because of her disability and/or Defendant's perception of her disability.

37. Defendant treated Plaintiff less favorably than similarly-situated, non-disabled employees. Non-disabled employees were permitted remote work, provided needed training, given access to systems necessary to perform their jobs, and were not subjected to harassment, belittlement, and comments about being "broken" or "wounded."

38. Plaintiff, and only Plaintiff, was told she "did not fit," was repeatedly demeaned for her emotional state, and was treated as fragile and incompetent due to her disability.

39. Plaintiff was terminated on the false pretext of "resignation," a justification not applied to non-disabled employees and inconsistent with BJCTA's own attendance and resignation practices.

40. Defendant is directly liable for the actions and/or inactions of its managers and agents.

41. As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

### THIRD CAUSE OF ACTION
### Hostile Work Environment
### under Title I of the Americans with Disabilities Act

42. Plaintiff re-alleges and incorporates by reference paragraph nos. 7-23 with the same force and effect as if fully set forth herein and further states as follows:

43. Plaintiff was subjected to severe and pervasive harassment based on her disability, including repeated comments by Lynch that she was "broken," "wounded," and incapable; exclusion from training; isolation; intimidation; and excessive monitoring.

44. Lynch repeatedly summoned Plaintiff to closed-door meetings, during which he demeaned her emotional state and mocked her disability. These comments were demeaning, humiliating, and made specifically because of Plaintiff's medical conditions. Lynch would then make such derogatory comments in public, in front of other employees.

45. Defendant was aware of the harassment but failed to take prompt corrective action, allowing the hostile, disability-based environment to intensify.

46. Defendant's conduct altered the conditions of Plaintiff's employment and created an abusive working environment in violation of the ADA.

47. Defendant is directly liable for the actions and/or inactions of its managers and agents.

48. As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of

employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

**FOURTH CAUSE OF ACTION**
**Retaliation**
**under Title I of the Americans with Disabilities Act**

49. Plaintiff re-alleges and incorporates by reference paragraph nos. 7-23 with the same force and effect as if fully set forth herein and further states as follows:

50. Plaintiff is a qualified individual with a disability within the meaning of the ADA. More specifically, Plaintiff suffers from PTSD, anxiety, and panic-disorder-related symptoms that substantially limit one or more major life activities, including concentration, emotional regulation, and stress response. These disabilities were known or obvious to BJCTA.

51. At all relevant times, Plaintiff was capable of performing the essential functions of her position with or without reasonable accommodation.

52. Plaintiff engaged in protected activity by requesting a reasonable accommodation on November 13, 2024, including remote work—a modification that BJCTA routinely afforded to similarly-situated non-disabled employees who were permitted to work from home frequently or exclusively.

53. Despite its knowledge of Plaintiff's disabilities and the availability of remote work, Defendant failed to provide any accommodation, refused to engage in the interactive process, and *terminated* Plaintiff's employment within twenty-four (24) hours of her request, in clear retaliation.

54. Defendant's refusal to consider or implement reasonable accommodations was not based on undue hardship, as remote work was commonly used in Plaintiff's department and had already been approved for other non-disabled employees.

55. Defendant is directly liable for the actions and/or inactions of its managers and agents.

56. As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

## FIFTH CAUSE OF ACTION
### Hostile Work Environment Based on Gender under Title VII

57. Plaintiff re-alleges and incorporates by reference paragraph nos. 7-23 with the same force and effect as if fully set forth herein and further states as follows:

58. Plaintiff is an African-American female.

59. Plaintiff was subjected to discriminatory and inappropriate conduct by her male supervisor, Matt Lynch, including repeated closed-door meetings, comments implying fragility or emotional instability, isolation, and targeting Plaintiff for intimidation tactics not directed at male workers.

60. Lynch denied Plaintiff training, access, and opportunities afforded to similarly-situated male employees. He spoke to Plaintiff in a belittling and paternalistic manner, calling her "wounded," "broken," and a "baby bird," suggesting gendered assumptions about emotional weakness.

61. Lynch's conduct toward Plaintiff was different in nature, tone, and frequency from his interactions with male employees, and was grounded in sex-based stereotypes regarding women's emotional stability and competence.

62. Defendant knew or should have known of Lynch's conduct but failed to take prompt action to prevent or correct the harassment.

63. Defendant's conduct altered the conditions of Plaintiff's employment and created an abusive working environment in violation of Title VII.

64. Defendant is directly liable for the actions and/or inactions of its managers and agents.

65. As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

### SIXTH CAUSE OF ACTION
### Race Discrimination
### under Title VII and Section 1981

66. Plaintiff re-alleges and incorporates by reference paragraph nos. 7-23 with the same force and effect as if fully set forth herein and further states as follows:

67. Plaintiff is an African American female.

68. Plaintiff was treated less favorably than similarly-situated employees outside her protected class. More specifically, non-Black employees in Plaintiff's department were permitted to work remotely, granted full access to required training, included in meetings, and were not subjected to intimidation tactics or derogatory comments about being "broken," "wounded," or emotionally unstable.

69. Plaintiff alone was denied training, isolated, publicly undermined, and repeatedly intimidated, including through locked-door meetings, and derogatory remarks reflecting stereotypes about perceived emotional weakness.

70. Plaintiff was further subjected to discrimination in the form of denying her access to training, excluding her from remote-work opportunities—while allowing her similarly situated non-Black counterpart to work remotely—and terminating her employment on false pretenses.

71. Defendant is directly liable for the actions and/or inactions of its managers and agents.

72. As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

**SEVENTH CAUSE OF ACTION**
**Failure to Accommodate**
**under Section 504 of the Rehabilitation Act**

73. Plaintiff re-alleges and incorporates by reference paragraphs nos. 7-23 with the same force and effect as if fully set forth herein and further states as follows:

74. The operations of Defendant constitute a "program or activity" as defined under 29 U.S.C. 794, in that it received federal financial assistance from the federal government.

75. Section 504 requires that recipients of federal assistance reasonably accommodate persons with disabilities in accordance with the standards applied under Title I of the Americans with Disabilities Act of 1990.

76. Plaintiff is a qualified individual with a disability. More specifically, Plaintiff suffers from PTSD, anxiety, and panic-disorder-related symptoms that substantially limit one or more major life activities, including concentration, emotional regulation, and stress response. These disabilities were known or obvious to BJCTA.

77. At all relevant times, Plaintiff was capable of performing the essential functions of her position with or without reasonable accommodation.

78. Plaintiff requested a reasonable accommodation on November 13, 2024, including remote work—a modification that BJCTA routinely afforded to similarly-situated non-disable employees who were permitted to work from home frequently or exclusively.

79. Despite its knowledge of Plaintiff's disabilities and the availability of remote work, Defendant failed to provide any accommodation, refused to engage in the interactive process, and terminated Plaintiff's employment within twenty-four (24) hours of her request.

80. Defendant's refusal to consider or implement reasonable accommodations was not based on undue hardship, as remote work was commonly used in Plaintiff's department and had already been approved for other non-disabled employees.

81. Defendant's failure to accommodate and refusal to engage in the interactive process violated Plaintiff's rights under the Rehabilitation Act.

82. Defendant is directly liable for the actions and/or inactions of its managers and agents.

83. Defendant failed to establish, implement and/or maintain practices, procedures and policies to ensure that employees with disabilities, or who were perceived or regarded as having disabilities, were accommodated when seeking reasonable accommodations.

84. As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

## EIGHTH CAUSE OF ACTION
### Disparate Treatment
### under Section 504 of the Rehabilitation Act

85. Plaintiff re-alleges and incorporates by reference paragraphs nos. 7-23 with the same force and effect as if fully set forth herein and further states as follows:

86. The operations of Defendant constitute a "program or activity" as defined under 29 U.S.C. 794, in that it received federal financial assistance from the federal government.

87. Section 504 requires that recipients of federal assistance reasonably accommodate persons with disabilities in accordance with the standards applied under Title I of the Americans with Disabilities Act of 1990.

88. Plaintiff is a qualified individual with a disability, or was regarded as such.

89. Plaintiff was subjected to adverse treatment—including denial of training, exclusion from meetings, harassment about her disability, intimidation, and termination—because of her disability and/or Defendant's perception of her disability.

90. Defendant treated Plaintiff less favorably than similarly-situated, non-disabled employees. Non-disabled employees were permitted remote work, provided needed training, given access to systems necessary to perform their jobs, and were not subjected to harassment, belittlement, and comments about being "broken" or "wounded."

91. Plaintiff, and only Plaintiff, was told she "did not fit," was repeatedly demeaned for her emotional state, and was treated as fragile and incompetent due to her disability.

92. Plaintiff was terminated on the false pretext of "resignation," a justification not applied to non-disabled employees and inconsistent with BJCTA's own attendance and resignation practices.

93. Defendant is directly liable for the actions and/or inactions of its managers and agents.

94. As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

### NINTH CAUSE OF ACTION
### Retaliation
### under Section 504 of the Rehabilitation Act

95. Plaintiff re-alleges and incorporates by reference paragraphs nos. 7-23 with the same force and effect as if fully set forth herein and further states as follows:

96. Plaintiff is a qualified individual with a disability, or was regarded as such.

97. The operations of Defendant constitute a "program or activity" as defined under 29 U.S.C. 794, in that it received federal financial assistance from the federal government.

98. Section 504 requires that recipients of federal assistance reasonably accommodate persons with disabilities in accordance with the standards applied under Title I of the Americans with Disabilities Act of 1990.

99. Plaintiff is a qualified individual with a disability within the meaning of the ADA. More specifically, Plaintiff suffers from PTSD, anxiety, and panic-disorder-related symptoms that substantially limit one or more major life activities, including concentration, emotional regulation, and stress response. These disabilities were known or obvious to BJCTA.

100. At all relevant times, Plaintiff was capable of performing the essential functions of her position with or without reasonable accommodation.

101. Plaintiff engaged in protected activity by requesting a reasonable accommodation on November 13, 2024, including remote work—a modification that BJCTA routinely afforded to similarly-situated non-disabled employees who were permitted to work from home frequently or exclusively.

102. Despite its knowledge of Plaintiff's disabilities and the availability of remote work, Defendant failed to provide any accommodation, refused to engage in the interactive process, and **_terminated_** Plaintiff's employment within twenty-four (24) hours of her request, in clear retaliation.

103. Defendant's refusal to consider or implement reasonable accommodations was not based on undue hardship, as remote work was commonly used in Plaintiff's department and had already been approved for other non-disabled employees.

104. Defendant is directly liable for the actions and/or inactions of its managers and agents.

105. As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays this Court will assume jurisdiction of this action and, after trial, provide relief as follows:

1. Issue a declaratory judgment that the employment practices, policies, procedures, conditions and customs that led to the discrimination and retaliation by Defendant are violative of

17

the rights of Plaintiff as secured by Title VII, Section 504 of the Rehabilitation Act, 42 U.S.C. Section 1981, and the Americans with Disabilities Act.

2.	Grant Plaintiff a permanent injunction enjoining Defendant, its respective agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate Title VII, Section 504 of the Rehabilitation Act, 42 U.S.C. Section 1981, and the Americans with Disabilities Act.

3.	Enter an Order requiring Defendant to make Plaintiff whole by awarding Plaintiff back pay (plus interest), reinstatement or front pay in lieu thereof, compensation for loss of wages and benefits, lost seniority, and pension benefits and nominal, compensatory and punitive damages.

4.	Plaintiff further prays for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees, and expenses incurred by this litigation.

5.	Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory and other relief, is the only means of securing adequate relief.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY
ON ALL ISSUES TRIABLE BY JURY**

Respectfully submitted,

*/s/Nicki Lawsen*
Sidney Jackson
Samuel Fisher
Nicki Lawsen
*Attorneys for the Plaintiff*
**Wiggins, Childs, Pantazis, Fisher & Goldfarb, LLC**
The Kress Building
301 Nineteenth Street North

18

Birmingham, Alabama 35203
sjackson@wigginschilds.com
sf@wigginschilds.com
nlawsen@wigginschilds.com